Yes, good morning, Your Honor. Robert Swain for the petitioner, Mr. Santana-Gonzalez. And I intend to reserve at least three minutes for rebuttal. In this case, the government failed to prove the single ground of removability alleged in the notice to appear. And because of that, this court should reverse the order of removability. Now, the government makes three central concessions in its briefing. First, they concede that under the ground charge, there has to be an actual entry involved of the person being smuggled. And that the entry ends as a matter of law when the original transporter ceases to transport the individual. The government also concedes that the conviction at issue here is insufficient to show the ground of removability. And, of course, that's understandable because as the elements were set out in the plea agreement and the factual basis of the plea agreement show that the offense was transportation of individuals who were already present in the United States. And the factual basis sets forth that the aiding and abetting was aiding and abetting the presence of the individuals already in the United States. So is it your contention that what happened is that after the original smugglers or whoever transported them across, dropped them off, that he then picked them up at that point after that? And that's the basis for the 1325 charge? Yes, sir. That's what the factual basis shows. And that's what the complaint shows. How does that fit within the language of a two? How is that eluding examination or inspection by immigration officers? Doesn't that refer to examination or inspection at a border point? Well, under this court's holding in Kerala is now the courts, lower courts understand that to be the case. But at the time this case went on, the government routinely charged aiding and abetting for eluding within the country. And so the facts are stipulated in the plea agreement that someone could be here for two years. And then if somebody transports them, that could have been charged as a 1325 to as eluding. Yes. Before Kerala. Yes. And in fact, in this case, the original charge was a transportation offense. It was one of these flip flops of a felony and a misdemeanor. The felony charge was not bringing in. The felony charge was transportation. And yes, your honor, if you under 1324, if you transport an individual who's been here any length of time and you know that person is undocumented and you're furthering their illegal presence in the country, that can be charged. And previous to and previous to Kerala's that that was routinely disposed out as a misdemeanor, aiding and abetting, eluding. This sounds like a collateral challenge on the conviction that there really wasn't a factual basis for this conviction. Is is that I mean, did you waive in the plea agreement collateral challenges? And if so, would it cover an argument that it wasn't actually a factual basis under the for the offense is properly understood? Well, I don't think that's way because we have the actual documents of the the plea and the elements. It's the government itself. This is the same opposing party here where the government agreed that the elements of the offense were facilitating the unlawful presence within the United States and eluding inspection within the United States. And so it would be fundamentally unfair to say, well, you can plead to this offense. The elements have nothing to do with bringing someone across the border and and then come back later and say, oh, yeah, sorry, we got you, because now we're saying as a matter of law, you did agree to do that. But the factual basis specifically disputes that the facts in the complaint dispute that. And the hearing before the immigration judge was all about whether Mr. Santana's actions actually involved in entry. And the the the court didn't rely just only on the conviction. The court relied on its speculation. And this was the third concession I was going to get to in terms of the government conceding in its brief that there's no facts or evidence to support the immigration judge's speculation that Mr. Santana must have been involved in some type of conspiracy that involved bringing the aliens actually into the country. This is exactly the type of case like in Hernandez, Guadarrama, where the individual was charged with under the same ground because he was transporting individuals within the United States. And in fact, in Hernandez, Guadarrama, the facts were stronger because they had a sworn statement from one of the material witnesses that they introduced into evidence that said that they had arranged with the with the petitioner in that case in Mexico. But despite that, it was challenged as insufficient and not carrying sufficient weight. But even with that direct evidence, the this court of appeal held that that was insufficient to prove the ground of bringing across the border. Of course, in that case, it was at a checkpoint many more miles north of the border. But the principle is the same when the transporter seizes the transport, because there's no dispute about the facts of what happened. The original transporter took these two individuals to a house about four miles north of the border. They were there for some period of time. The government didn't prove whether it was hours or days. Then the individuals were instructed to go to a nearby church and wait for a car to be picked up. The way that car was was driven by Mr. Santana and he was stopped on a on a roving stop several miles later. And so this is a case where we all the affirmative evidence demonstrably shows that there was no entry. And the government has conceded that. And so when the court asked me about, well, am I going against the conviction? The government's position in its brief is that the conviction doesn't show an entry. The government's position in its brief is because the factual basis and the elements as set forth in the plea agreement had nothing to do with entry, but rather with aiding and abetting the presence of the of the individuals inside the United States, that the conviction cannot be sufficient basis. Now, the government is asking for a remand. And of course, that goes against all the case law that we've cited. They haven't cited a single case to suggest when the government fails to prove the single charge removability, that the remedy is then to go back and reconsider or try again. The the facts and the issue were fully presented before the agency. This was the whole argument before the immigration judge for almost a year. The petitioner, through his attorney, said, no, this is not involving bringing across the border. This is transportation within the country. So did the BIA or the I.J. have an opportunity to continue? Consider Carro Rubio's during the proceedings before the agency? Yes, your honor, both at the at the immigration court level and at the BIA, because you can read from the transcript and the written pleadings by the attorney at the immigration judge court level. It was relying on cover rubies. And in fact, the immigration judge in his decision, I think it's set towards the end. He cites it. That's it. It's been a record 46. He cites cover rubies, but doesn't think that it really is. Well, I'll let the court draw its own conclusion, but it clearly was presented. I see that he says the court does not find this case in any way contrary to some other immigration offense that could have been charged here. Besides 1352 to. Well, the charge originally was one of these what's called flip flops. It was charged as transportation. What is what is flip flop? What do you what do you mean when you say so? So one of the common procedures in border districts is for the government to charge individuals with a felony and a misdemeanor. And the the standard agreement and deal is if you quickly plead to the misdemeanor, the felony will be dismissed. And so this was part of that proceedings. That's why the proceedings happened so quickly. And so it was a common, at least pre-corral is a common disposition for someone transporting undocumented immigrants inside the country would plead to a 1325 and the 1324 transportation felony would be dismissed. And that's exactly what happened in this case. And so there's nothing that the I mean, the court has before it, the four corners of the record. The court can look at it as the government seems to concede there. There is no actual facts that show that there was anything related to border. The one thing the government points to is the the agent's statement in the complaint whereby the agent says that Mr. Santana Gonzalez admitted to making arrangements to smuggle illegal aliens into the United States. But that's wholly untethered to any actual factual assertion. It doesn't say what he said when he said it. You've conceded that his plan to pick them up at the church was prearranged as part of their entry into the country. Isn't that correct? I thought I heard you say that this morning. I'm sorry if I gave that impression. No, we're we can contend the exact opposite. There's an absolute lack of any evidence whatsoever that he had any. What I said was that the immigration judge, without pointing to any fact or piece of evidence, speculated that there was some there must have been some kind of ongoing conspiracy. So that's what I was referenced to. But in terms of I thought you said they were told they were to go to the church and they would be picked up and that he was the person to pick them up. That suggests prearrangement. And what the BIA was saying was that someone who is prearranged as part of the process of entry to do that kind of pickup is covered. Well, no, there was no evidence of prearrangement. What the only evidence was that the two individuals were taken to a house sometime after that. Hours or days later, they were told to go to the to the church to be picked up. So, yes, the pickup at the church was prearranged, but that was done right at the moment. And there's no nexus or tie to the actual entry that could have been days before. And if the court doesn't have any other specific questions, I'd like to reserve the rest of my time for a rebuttal. All right. Thank you, Mr. Swain. Mr. Hall. Thank you. May it please the court. My name is Jeffrey Hall. I'm arguing on behalf of the respondent today. This case is unusual for two reasons. First, because the petitioner conceded his removability for assisting the legal entry. But the immigration judge instead relied solely on his related conviction to establish his removability because this legal conclusion raised some questions. Respondent requested a remand in this case. But this case is also unusual for a second reason. And that is the Ninth Circuit recently confirmed the validity of both the BIA's and the immigration judge's legal conclusion that petitioner's conviction necessarily relates to a legal entry. Thus, based on the law after Corrales-Vasquez, petitioner's conviction for aiding and abetting an alien to elude examination or inspection necessarily establishes that he aided or abetted an alien. It would be true if it were a valid conviction with a valid factual basis under Corrales. But his contention is that in the before Corrales, you were charging things without regard to whether or not the evasion occurred at a point of entry. Is that true? Your Honor, he makes petitioner makes that contention. But it's as you mentioned before, a collateral attack on his conviction. At AR 129, the plea agreement says that he waives those collateral attacks on conviction. Here today, the only factual basis. Is there anything that ties this to an evasion at the point of entry? Yes, Your Honor. So in the plea itself, it gives the element of eluding or evading inspection. And under this previous court's previous precedent and the BIA precedent, that element necessarily relates to entry. So the Rinson case, the way it's written in the plea agreement doesn't line up with Corrales, does it? Those those elements don't look like a correct statement of the elements in light of Corrales. Your Honor, as long as that element is in there about eluding inspection, that inspection necessarily relates to inspection at the border. And that was established under the Ninth Circuit case law and the BIA case law. It didn't happen here. What we're looking at are the facts here. And that that clearly wasn't at the border here. Are you saying we can't look at the facts? Your Honor, so the the conviction establishes what the the elements conclusively. And the Ninth Circuit says that those elements include an inspection of the border. Beyond that, though, the petitioner himself conceded removability three times. And as his counsel mentioned, there is a statement in the factual record in terms of the charging document that he stated that he made arrangements to smuggle illegal aliens into the United States for money. I'm sorry, Mr. Hall, but is the government changing its position from its concessions in the brief? My understanding of the government's position was that you agreed that this this using this conviction was problematic or as a basis for removal. But that you asked for remand for the agency to consider corrode Rubio's and to find out to determine whether petitioners actual conduct established removability. So are you now taking a different position than that which you took in your brief? Your Honor, we're being consistent in that we're requesting a remand because the BIA needed to consider legal questions in the first instance and also factual questions because it didn't have an opportunity to do so because it relied solely on a legal conclusion. That hasn't changed. Counsel, we've had curve curve or Rubio's in front of it. At the time. Yes, Your Honor. And I think that IJ's decision seems to be speculating that because there was an arrangement to pick up at the church. There was also an arrangement to smuggle the aliens, and that's a speculation that is the defective in the IJ's decision making in its purported application of Rubio's. Your Honor, I wouldn't say that. So I believe that the IJ, the fairest reading of the IJ's opinion is that he relied on the fact of the conviction and the element of conviction. And that's specifically what the IJ said in saying that that is why the element that the defendant did so to assist aliens in eluding examination inspection by immigration officials in the United States is such a key element. He also said the factual basis for this pleading bears it out. And that's true. He was the petitioner was apprehended only a few miles north of the border. There is a point of entry there. I'm sorry, a port of entry right there. And so it's entirely plausible that the aliens did, in fact, elude examination there, go up further and that he had already arranged in advance with a smuggler to pick them up. So it's entirely plausible. It aligns with what the elements require, required back then and required now. Now, admittedly, the Ninth Circuit was a little bit unclear because there was an unpublished decision that suggested that 1325A2 could encompass inspections within the United States that were wholly within the United States and unrelated to entry. But the published decisions in both the Ninth Circuit and the BIA and now the published decision in Corrales-Vazquez clearly says that it has to relate to entry. And so I believe that the first reading is that the IJ understood that. That's why he focused on the element itself. That's why when the BIA read the IJ's decision, it said we've already determined in Martinez-Jimenez that this type of conviction necessarily means that he was that the petitioner was engaged in alien smuggling. And it didn't go into the facts. Neither the IJ nor the BIA thought that it was necessary to go in the facts. Both because there was a concession originally three times by the petitioner that he was removable and that his conduct related to illegal entry, which is ordinarily sufficient. That was at the pleading stage. And then the petitioner's counsel did request for repleading once he became represented, but decided to sort of implicitly drop that in asking the court for its determination. So there never was a chance for the immigration judge to develop the factual record. And therefore the immigration judge relied on the law because that was the argument that the petitioner's counsel made. So I think that the IJ's decision and the BIA's decision both rely on the law. The law was a little bit unclear. It was worth a remand before. The government still does not oppose a remand. But what the law clearly establishes now is that that element necessarily required an evasion of inspection at a port of entry. And by assisting that, the petitioner assisted with an illegal entry and is therefore deportable, engaged in alien smuggling. So I think that the facts are consistent with it. Again, the immigration court didn't have an opportunity to fully engage with those. And if it were remanded, certainly the petitioner could make an argument that he should be allowed a collateral attack on the conviction. And the courts could deal with that there. It may not be in the BIA. It may be for other courts where we'd have to make that collateral attack. But if it was remanded, he would potentially have the opportunity to do so. He would have the opportunity to make his other arguments, including for cancellation of removal under the stop time rule in Pereira that he references in his brief. And the immigration court would have the opportunity to establish whether or not the facts support it. Because as Martínez Jiménez says, and as has been established in this court, all that required is showing that the facts align with the deportability. A conviction is not required. And so there are those two bases to find that the petitioner is deportable here. And the BIA and the immigration judge should have the opportunity to engage with the facts in the first instance, if that's necessary, and with the legal arguments that petitioner may make about the insufficiency of his conviction. I'd like to go through just a couple of other points. As previously discussed, the IJ's decision is not a model of clarity, but it does appear that he really did rely on the fact that the alien admitted and, I'm sorry, that the conviction included that specific element that was determined under BIA and Ninth Circuit precedent to include an illusion of the inspection at the port of entry. And the only other point that I think is worth making here is that if this court really, so the petitioner has sought a decision essentially today from this court, and if this court had to decide to issue today, his conviction does conclusively establish that he's deportable under 1227. I understand that there's a question of the facts. The government does not oppose a remand in this case, so that all of those arguments can be fully vetted. But right now, there is no other argument to be considered. It's only the legal determination, and that legal determination conclusively establishes removability. I'll mention that this court, after Corrales-Vazquez, there is an unpublished decision that vacated a conviction on direct appeal for an alien being found 60 miles north of the border and invading inspection there. So clearly, the Ninth Circuit, Corrales-Vazquez, although it says it's related to a port of entry, that's clearly all it is. So there's no sort of additional element that you can get inside. So the Ninth Circuit has established that the petitioner is removable in this case, and the court has everything it needs to deny his petition. Again, we would not object to a remand so that these legal issues can be considered fully, so that the factual issues can be considered fully, and so that he can make any additional arguments that he chooses about the availability of other immigration relief that he argues for in his brief. But that has not been addressed by the BIA in the first instance. I'm happy to take any more questions or address the sufficiency of the notice to appear for just jurisdictional purposes, but I believe that the petitioner has already conceded that this court's opinion, and Corrine Githy establishes that there was jurisdiction here. That's no longer a question. He's preserving the argument for further appeal. So if there's any other questions, I'm happy to take them from the court. It doesn't look like it, so thank you, counsel. Thank you, Your Honor. Mr. Swain? You're muted, Mr. Swain. Thank you. Thank you, Your Honor. It seems a little unfair and unusual for the government to change its position the day of oral argument, because in its brief at page 26, the government specifically notes that the evidence of conviction is insufficient because it shows the petitioner aided the alien's presence, not their entry. That's straight out of their brief. So now they want to do one of these gotchas that, oh, you pled to elements that clearly are not subject to removability, but because of a new case, we're going to take advantage of you. The second point I want to make is the government claims that there was some concession made by Mr. Santana. That was while he was in custody, before he had counsel. The minute he got counsel in May of 2016, all the way through the rest of the proceedings, it was denied. That was the whole basis for all the litigation. And in fact, this ties into why remand doesn't make any sense. The government knew that this was at issue. The government submitted its evidence for the hearing in April of 2017. In March of 2017, included a whole number of exhibits, including the complaint, the plea agreement, and the I-213, which makes no reference whatsoever of any entry. And there's even a sworn statement of Mr. Santana Gonzalez from 2012. The government had all the opportunity to present all the evidence it possibly could to try and tie this to an actual entry. And finally, I would just say that it would be fundamentally unfair to do some kind of remand, and then the government's going to try and say, well, under Corrales, like the government's saying now all of a sudden, your conviction is necessarily a ground of immovability. Well, it's invalid on its face, but we would have no remedy. We're outside the time for a habeas. There's no way to set aside that. And so it would be fundamentally unfair in those circumstances. The government had a full opportunity to litigate all the legal issues. All the legal and factual issues were presented before the immigration judge. The board, in a one-person decision, references the immigration judge. So the court looks through to what happened in front of the immigration judge. Everything was litigated there. It's insufficient evidence. The government does not get a second bite at the apple. And for those reasons, the court should vacate the order of removability. Thank you very much. Thank you very much, counsel. Santana Gonzalez v. Barr will be submitted. Thank you.
judges: Fernandez, Wardlaw, Collins